## COURT OF APPEALS.

### April 23, 1918.

# THE PEOPLE ex rel. CERZOSIE v. THE WARDEN, etc.

### (223 N. Y. 307.)

STATUTE (LAWS 1915, CHAP. 579) PROVIDING FOR INDETERMINATE SENTENCES FOR CERTAIN OFFENSES IN CITIES OF THE FIRST CLASS AND FOR APPOINTMENT OF A PAROLE COMMISSION—SUCH STATUTE NOT EX POST FACTO AS TO CRIME COMMITTED AFTER STATUTE TOOK EFFECT BUT BEFORE APPOINTMENT OF COMMISSION.

The act applicable to cities of the first class, which provides for indeterminate sentences for certain offenses and for the appointment of a parole commission, and that "any person convicted of any offense punishable by imprisonment" in certain penal institutions, after the creation of such commission, should be subject to such law, was passed May 10, 1915 (chapter 579) to "take effect immediately." The parole commission in the city of New York was not appointed until December 17, 1915. The relator's crime was committed in that city November 25, 1915, and he was convicted January 18, 1916, and sentenced under the provisions of the act. In habeas corpus proceedings he claimed that the law as to him was ex post facto, inasmuch as no parole commission was appointed until after the crime was committed. It was held that the sentence was valid; that the law took effect at once as therein stated and that this result was not affected or impaired because of any delay in the appointment of a commission; that it fully warned him before he committed the crime that he might be brought under its provisions and that he was not, therefore, subjected to any penalty or injustice as by an ex post facto law. (People ex rel. Unger v. Kennedy, 207 N. Y. 533, distinguished.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 31, 1917, which modified and affirmed as modified an order of Special Term sustaining a writ of habeas corpus and remanding the relator for re-sentence. The modification of the Appellate Division consisted in a direction for the discharge of the relator.

The facts, so far as material, are stated in the opinion.

*Edward Swann, District Attorney (Robert S. Johnstone* and *Felix C. Benvenga,* of counsel), for appellant.

The Parole Commission Act, as applied to this case, is not an *ex post facto* law. (People ex rel. Hendrick v. Kernochan, N. Y. L. J., Dec. 28, 1916, 177 App. Div. 922; Prince v. Warden of Penitentiary, N. Y. L. J., Nov. 9, 1917; People ex rel. St. Clair v. Davis, 143 App. Div. 579; Calder v. Bull, 3 Dall. 386; Malloy v. South Carolina, 237 U. S. 180; Ross v. Oregon, 227 U. S. 150; Frank v. Mangum, 237 U. S. 309; Long Sault Dev. Co. v. Call, 242 U. S. 272; New Orleans Water Works Co. v. Louisiana Sugar R. Co., 125 U. S. 18.)

*Franklin Grier,* for respondent.

The court below was right in denying appellant's motion to dismiss the writ. (Clarke v. Warden, 39 Misc. Rep. 113; Murphy v. Commonwealth, 172 Mass. 264; Joyce v. People, 246 Ill. 124.) The Parole Law is inapplicable to the relator's offense or to any offense committed before the creation of the parole commission. (Murphy v. Commonwealth, 172 Mass. 264; *Ex parte* Murphy, 87 Fed. Rep. 549; People v. Dane, 81 Mich. 36; People ex rel. Adams v. Johnson, 44 Misc. Rep. 552; People ex rel. Lynar v. Warden, N. Y. L. J., Aug. 24, 1917; People ex rel. Unger v. Kennedy, 207 N. Y. 536; Endlich on Statutes, § 49; Joyce on Intoxicating Liquors, § 368; Prince v. Warden, N. Y. L. J., Jan. 9, 1917.) The court below erred in denying relator's motion to discharge. (People ex rel. Trainor v. Baker, 89 N. Y. 460; Matter of Sweatman, 1 Cow. 144; People ex rel. Tweed v. Liscomb, 60 N. Y. 569; People ex rel. Wolff v. Jacobs, 66 N. Y. 8.)

HISCOCK, Ch. J.:

The relator was convicted in the Court of General Sessions of the county of New York of the crime of assault. He was sen-

tenced to an indeterminate term of imprisonment under the provisions of chapter 579 of the Laws of 1915, commonly known as the Parole Commission Act.    He claims without dispute by the People that the sentence imposed upon him was more burdensome than could have been imposed except for the provisions of said act, and he then insists that such act had not taken effect at the time when the crime was committed, and that, therefore, he could not be punished under it.    This claim that the law was *ex post facto* as to him was the sole ground specified in his petition as a basis for the writ which was issued and the only one which has been considered in the courts below or in the arguments before us.    We shall, therefore, confine our consideration wholly to the complaint thus specified.

In this consideration, the chronology of certain events is necessarily important.    The statute was passed and became a law May 10th, 1915.    Relator's crime was committed November 25th, 1915.    The parole commission created in the city of New York under said act for the purpose of administering and carrying out its provisions in said city was appointed December 17th, 1915.    The relator was convicted, and this step is regarded as of importance under the terms of the act, January 18th, 1916.    With these dates before us we shall consider the provisions of the statute for the purpose of determining whether the same was so in effect at the time relator's crime was committed as to be a constitutional authority for the sentence which was imposed upon him.

The act was entitled one " extending and developing the reformatory and correctional functions of workhouses, penitentiaries and reformatories under the jurisdiction of departments of correction in cities of the first class, providing for the sentence, commitment, parole, conditional discharge and reapprehension of persons committed to such institutions and for the establishment of a parole commission in such cities."    Summarized in what we think will be a fair manner for the pur-

poses of this proceeding it in substance provided for the application of a system of indeterminate sentences and parole for persons convicted of certain offenses; that in any city of the first class where there was a department of correction having certain jurisdiction there should be the power in the manner specified to create " a parole commission to be constituted and appointed and to possess the powers and be subject to the duties " in said act specified; that " after the creation of a parole commission in any of the said cities   *   *   *   any person *convicted* of any offense punishable by imprisonment " in certain penal institutions should be subject to imprisonment under and in accordance with the terms of said act; that said act should " take effect immediately."

The argument of the relator, of course, is based upon the theory that said act did not take effect in any given city until the parole commission therein provided for had been appointed and that inasmuch as this did not occur in New York City until after the commission of his crime his punishment was not and could not be administered in accordance with the terms of the act. We disagree with this fundamental and essential proposition in his argument.

We think that in its larger, and, for the purposes of this proceeding, controlling, features, the statute took effect and went into operation on the date when it was passed. By its terms it explicitly stated this to be the fact, and we regard this explicit statement as supported by the general provisions and scope of the statute. Its title indicated that it was of general scope and that it was adopted for the purpose of permitting certain present modifications in the administration of penal laws which were deemed to be beneficial and in the interests of real reform. Having prescribed various changes which might be made in methods of punishment it provided that any city of a certain description might at once take steps for the appointment of a parole commission to carry out the provisions of the statute.

Under these conditions we think that the law took effect at once as therein stated and that this result was not affected or impaired because in some particular city there might be delay or even failure to effect the appointment of a commission through and by which the provisions of the statute might be administered and carried into operation.

In our opinion the statute in a real as well as in a technical and legal sense was in force at the time when the relator committed his crime and forewarned him of the punishment which he might expect. As has been pointed out, it outlined a system of punishment such as has been inflicted upon him and it provided that in case he should be convicted after a commission had been appointed for administering the provisions of said statute he should be punished in accordance with its terms. Thereby it was indicated and he was fully warned before he committed his crime that in the city of New York there might at any time be adopted an altered form of punishment which would be applied to him if he was convicted after its adoption. Thus he was not subjected to a new and altered form of punishment formulated after his crime was committed. He was, so far as we can see, subjected to none of the penalties or injustice arising from an *ex post facto* law.

It is suggested that too much emphasis should not be given to the word " convicted " in the provision that any person convicted after the appointment of a commission should be punished in accordance with the terms of the statute. We do not agree with this view. In the first place the language of the statute seems to be perfectly specific in its application to convictions occurring after such appointment. In the second place this was, within the limits which we have discussed, the important step which gave opportunity for application of the provisions of the statute.

We do not find in the case of People ex rel. Unger v. Kennedy (207 N. Y. 533, 29 N. Y. Crim. 258) anything which seems to

us to sustain the view which has been taken by the courts below. In that case we were considering a much-bungled piece of legislation and were trying simply to determine whether the Legislature had attempted to delegate to the voters the right to decide whether the statute should ever become a law or the question whether a completed and fully enacted piece of legislation should become operative in a certain territory. We recognized that there might be cases where it would be difficult to determine which question had been submitted, but that beyond doubt the questions were entirely different. One might be submitted to the voters and the other one not. So far as concerns the question which we are considering in this case, it was in effect provided in the act itself that it should not become opeartive until in the future and that on a negative decision by the voters it should not become operative even at such future time. While as we have pointed out the present statute did not become operative in a certain sense until an administrative body was appointed to give effect to its operations, the statute in its fundamental provisions took effect at once, and it gave notice to this relator before his crime was committed that if and when a commission was appointed he would be punished in a certain manner which was different than that which prevailed before the statute was adopted.

For these reasons we think that the orders appealed from should be reversed, the writ dismissed and the relator remanded to custody.

CHASE, COLLIN, CUDDEBACK, CARDOZO, POUND and ANDREWS, JJ., concur.

Orders reversed, etc.