THE PEOPLE OF THE STATE OF NEW YORK, Petitioner, *v.* JOHN RICHTER, Respondent.

Court of Special Sessions of the City of New York, County of New York, June 30, 1954.

*Edward Pious* for complainant.

*M. Mortimer Lancet* for respondent.

LOSCALZO, J. In 1938, an affiliation order was entered against respondent declaring paternity and ordering support of the natural child until he reached the age of sixteen years. The child became sixteen years of age on November 17, 1953, and subsequently the mother petitioned this court for an order, under subdivision 2 of section 69 of the New York City Criminal Courts Act, for continued support.

Subdivision 2 of section 69 of that act relates exclusively to proceedings instituted in New York City and explicitly empowers the Court of Special Sessions to order support of the natural child beyond the age of sixteen years. The pertinent provision is: " Support shall be ordered until the child reaches the age of sixteen years. Subsequently for good cause shown it may be ordered up to the age of twenty-one years or longer in the discretion of the court."

Respondent challenges the authority of this court to order continued support on the ground that the section is unconstitutional because it violates the Equal Protection Clause of the United States Constitution (14th Amendt.) and the Due Process Clause of the New York State Constitution (art. I, § 6). Violation is charged because section 127 of the Domestic Relations Law does not authorize the courts to order continued support after the child reaches sixteen years of age in the same kind of proceedings brought in other areas of the State outside New York City.

No question is raised as to the power of the Legislature to authorize the courts to order support of natural children beyond sixteen years, if uniformly provided for. The only question is whether the equal protection of the laws prohibits giving this court additional power to order support, which is not given to courts elsewhere in the State, in the same type proceeding. For the reasons set forth below, my conclusion is that no constitutional right of respondent will be violated if extended support is ordered.

The Fourteenth Amendment of the Federal Constitution provides, in part, that " No State shall  *  *  *  deny to any person within its jurisdiction the equal protection of the laws." The New York State Constitution has no equivalent provision;

but it may be assumed, without deciding, that the Due Process Clause (art. I, § 6) gives at least the same protection against discrimination as is afforded by the Fourteenth Amendment (see *Bolling* v. *Sharpe,* 347 U. S. 497; *Truax* v. *Corrigan,* 257 U. S. 312; *Central Sav. Bank* v. *City of New York,* 280 N. Y. 9, and *People* v. *Havnor,* 149 N. Y. 195).

The constitutional safeguard of equal protection of laws, while prohibiting discrimination among persons and classes of persons, does not require uniformity of laws between geographical areas. It does not preclude the Legislature from providing, in the exercise of sovereign discretion delegated to it and circumscribed by other constitutional provisions not here in question, special local laws for different municipal subdivisions or other geographical areas. True, legislation, though nominally in terms of a merely geographical differentiation, might fall within the interdiction of the constitutional provision if it worked a discrimination among classes of persons by singling out for special treatment a community having a predominantly racial or religious character. There is no suggestion, nor could there be, that any such ulterior purpose or effect is here involved. Absent such a consideration, the constitutional requirement for equal protection of laws does not raise a barrier to legislation local in its application merely because the burden of a special law, whether dealing with matters of substance or procedure, may press more heavily upon persons of one community than upon persons of other communities. (*Salsburg* v. *Maryland,* 346 U. S. 545; *Ohio* v. *Akron Park Dist.,* 281 U. S. 74; *Ocampo* v. *United States,* 234 U. S. 91; *Gardner* v. *Michigan,* 199 U. S. 325; *Mason* v. *Missouri,* 179 U. S. 328; *Chappell Chem. Co.* v. *Sulphur Mines Co.,* 172 U. S. 472; *Barbier* v. *Connolly,* 113 U. S. 27; *Missouri* v. *Lewis,* 101 U. S. 22; *People* v. *Havnor,* 149 N. Y. 195, *supra*; *People ex rel. Kipnis* v. *McCann,* 199 App. Div. 30, affd. 234 N. Y. 502; *Matter of Morgan* [*Rolle*], 114 App. Div. 45.)

As recently as January of this year, Mr. Justice BURTON, speaking for the majority of the court in the *Salsburg* case (*supra*), quoted with approval a portion of the opinion in the *Missouri* v. *Lewis* (*supra*), in which Mr. Justice BRADLEY had used as an illustrative assumption the very situation with which we are here concerned, a difference between law applying in New York City and elsewhere in New York State (346 U. S. 545, 551): " ' [T]here is nothing in the Constitution to prevent any State from adopting any system of laws or judicature it sees fit for all or any part of its territory. If the State of New

York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties, and the common law and its method of procedure for the rest of the State, there is nothing in the Constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the Fourteenth Amendment, be a denial to any person of the equal protection of the laws. * * * It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances.' *Missouri* v. *Lewis,* 101 U. S. 22, 31.''

The wide-ranging diversity which exists among the several States with respect to the duration of the support obligations of the natural parents (see Schatkin, Disputed Paternity Proceedings [3d ed., 1953], Appendix IV) does not give rise to any constitutional question of unequal treatment. If a mother residing in Connecticut should bring a proceeding against a putative father found in New York (Domestic Relations Law, § 135), he could not be heard to complain that if the same proceedings had been brought in Connecticut a different period of support would apply (Conn. Gen. Stat. [1949], § 8180). There is nothing in the intrinsic nature of such obligations to make the diversity of their definition in different geographical regions more just and reasonable simply because the regions are differentiated by State lines, for, as Mr. Justice Bradley said in *Missouri* v. *Lewis* (101 U. S. 22, 31, *supra*): '' If diversities of laws and judicial proceedings may exist in the several States without violating the equality clause in the Fourteenth Amendment, there is no solid reason why there may not be such diversities in different parts of the same State. A uniformity which is not essential as regards different States cannot be essential as regards different parts of a State, provided that in each and all there is no infraction of the constitutional provision. Diversities which are allowable in different States are allowable in different parts of the same State.''

With respect to local laws, as with respect to State-wide laws, the equality which is required is '' that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed '' (*Hayes* v. *Missouri,* 120 U. S. 68, 71; see, also, *Missouri Ry. Co.* v. *Mackey,* 127 U. S. 205, 209; *People ex rel. Armstrong* v. *Warden of City Prison of City of N. Y.,* 183 N. Y. 223, 225, and *People* v. *Havnor, supra,* p. 205). Hence, when the Legislature of the State of New York deems

that the public welfare is served by a different requirement of support in the city of New York than obtains in other portions of the State no constitutional question is involved.

This view of the constitutional safeguard of equal protection of the laws makes it unnecessary to consider and weigh, as respondent urges should be done, the reasonableness of the grounds for the distinction between the power of this court and that of courts elsewhere in the State to order support in the same type of proceeding.

However, if I were to make the appraisal which respondent contends for, I would not consider that the cases he relies upon (*Commissioner of Public Welfare of City of N. Y.* [*Krushal*] v. *Ladutko,* 256 App. Div. 775; *Commissioner of Public Welfare of City of N. Y.* [*Martinez*] v. *Torres,* 263 App. Div. 19) provide apt analogies, and I could not agree with his conclusion that the distinction here is based upon no reasonable ground. That there are differences between New York City and other portions of the State in respect of living conditions, costs of living, local community burdens of financing necessary welfare activities, recreational facilities, suitable employment and occupational opportunities for teen-age children, and a host of other relevant factors, can hardly be debated. In the absence of proof to the contrary, it cannot be assumed that the Legislature, in enacting this statute, did not consider and appropriately weigh such differences. (*Fort Smith Light Co.* v. *Paving Dist.,* 274 U. S. 387.) A comparison of the power to order support of legitimate children given the Domestic Relations Court in New York City with the power given the Children's Court elsewhere in the State suggests that the Legislature had in mind just such considerations (Children's Court Act, § 30-a; N. Y. City Dom. Rel. Ct. Act, § 92).

I therefore hold that subdivision 2 of section 69 of the New York City Criminal Courts Act is constitutional. This court has the power to continue these proceedings to determine whether good cause appears for continued support and to make such order as the circumstances warrant.

Hearing will be held and proof taken at Part IV, Court of Special Sessions, New York County, on July 21, 1954, at 2:00 P.M.